**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHER DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY** Plaintiff | § § § | |
| **V.** | § § § | |
| **CANDOR CONSTRUCTION COMPANY, INTERNACIONAL REALTY MANAGEMENT, LLC and MARIA ARACELY TORRES, Individually and on Behalf of the Estate of JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ, DECEASED, and as Next Friend of Minor Children MELISSA MENDOZA, LUIS ALBERTO MENDOZA and JONATHAN MENDOZA,** Defendants | § § § § § § § § § § § | **CIVIL ACTION NO. ____________** |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Companion Property and Casualty Insurance Company ("Companion") files this Original Complaint for Declaratory Relief against Defendants Candor Construction Company, Internacional Realty Management, LLC and Maria Aracely Torres, Individually and on Behalf of the Estate of Jose Rosalio (Miguel) Mendoza Vasquez, Deceased, and as Next Friend of Minor Children Melissa Mendoza, Luis Alberto Mendoza and Jonathan Mendoza pursuant to 28 U.S.C. §§1332 and 2201 and would respectfully show the Court as follows:

## I. THE PARTIES

1. **Companion Property and Casualty Insurance Company**, is a South Carolina company licensed to sell insurance in the state of Texas. Companion's principal place of business is 51 Clemson Road, Columbia, South Carolina 29202.

2. Upon information and belief, Defendant **Candor Construction Company** is a Texas corporation with its principal place of business in Dallas, Texas. Candor Construction Company may be served with process by serving its registered agent, Etzik Gedalia, at 17719 Cedar Creek Canyon Dr.; Dallas, Texas 75252. Candor Construction is a named insured under Companion policy no. DJGL103916, with a policy period from June 17, 2011 to June 17, 2012.

3. Upon information and belief, Defendant **Internacional Realty Management, LLC** is a limited liability company formed under the laws of Texas whose members are residents of Texas. Internacional Realty Management, LLC may be served with process by serving its registered agent, Hugh L. Caraway, at 405 N. St. Mary's Street, Suite 850; San Antonio, Texas. Internacional Realty Management, LLC claims to be an additional insured under the Companion policy DJGL103916, with a policy period from June 17, 2011 to June 17, 2012.

4. Defendant **Maria Aracely Torres,** Individually and on Behalf of the Estate of Jose Rosalio (Miguel) Mendoza Vasquez, Deceased, and as Next Friend of Minor Children Melissa Mendoza, Luis Alberto Mendoza and Jonathan Mendoza is an interested party and upon information and belief, a resident of Lewisville, Texas. Maria Aracely Torres may be served with process through her attorney, James Perrin, The Wyatt Law Firm, Ltd.; 70 NE Loop 410, Suite 725; San Antonio, Texas 78216. Maria Aracely Torres has sued Candor Construction Company in a lawsuit styled, Cause No. DC-11-15912; *Maria Aracely Torres, et al, v. Candor Construction Company, et al.*, in the 134th Judicial District Court of Dallas County, Texas and thus, has an interest as a potential beneficiary of the Companion insurance policy.

5. Defendant **Melissa Mendoza, a minor, by and through Maria Aracely Torres, her**

**mother,** is an interested party and upon information and belief, a resident of Lewisville, Texas. **Melissa Mendoza, a minor, by and through Maria Aracely Torres, her mother,** may be served with process through her attorney, James Perrin, The Wyatt Law Firm, Ltd.; 70 NE Loop 410, Suite 725; San Antonio, Texas 78216. Melissa Mendoza has sued Candor Construction Company in a lawsuit styled, Cause No. DC-11-15912; *Maria Aracely Torres, et al, v. Candor Construction Company, et al.*, in the 134th Judicial District Court of Dallas County, Texas and thus, has an interest as a potential beneficiary of the Companion insurance policy.

6. Defendant **Luis Alberto Mendoza, a minor, by and through Maria Aracely Torres, his mother,** is an interested party and upon information and belief, a resident of Lewisville, Texas. **Luis Alberto Mendoza, a minor, by and through Maria Aracely Torres, his mother,** may be served with process through his attorney, James Perrin, The Wyatt Law Firm, Ltd.; 70 NE Loop 410, Suite 725; San Antonio, Texas 78216. Luis Alberto Mendoza has sued Candor Construction Company in a lawsuit styled, Cause No. DC-11-15912; *Maria Aracely Torres, et al, v. Candor Construction Company, et al.*, in the 134th Judicial District Court of Dallas County, Texas and thus, has an interest as a potential beneficiary of the Companion insurance policy.

7. Defendant **Jonathan Mendoza, a minor, by and through Maria Aracely Torres, his mother,** is an interested party and upon information and belief, a resident of Lewisville, Texas. **Jonathan Mendoza, a minor, by and through Maria Aracely Torres, his mother,** may be served with process through her attorney, James Perrin, The Wyatt Law Firm, Ltd.; 70 NE Loop 410, Suite 725; San Antonio, Texas 78216. Jonathan Mendoza has sued Candor Construction Company in a lawsuit styled, Cause No. DC-11-15912; *Maria Aracely Torres,*

*et al, v. Candor Construction Company, et al.*, in the 134th Judicial District Court of Dallas County, Texas and thus, has an interest as a potential beneficiary of the Companion insurance policy.

## II. JURISDICTION AND VENUE

8. This suit is filed pursuant to 28 U.S.C. §2201, which authorizes actions for declaratory judgment. This suit is within the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 because it is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00. Companion seeks a declaration of the rights and duties of the parties pursuant to an insurance policy Companion issued to Candor Construction in connection with a fatal roofing accident sustained by Jose Rosalio (Miguel) Mendoza Vasquez (hereinafter referred to as "Jose Mendoza"), which forms the basis of a lawsuit styled: Cause No. DC-11-15912; *Maria Aracely Torres, et al, v. Candor Construction Company, et al.*, in the 134th Judicial District Court of Dallas County, Texas (the "Underlying Lawsuit").

9. The cost of defending Candor Construction and/or paying any judgment rendered against Candor Construction in that suit would be a sum in excess of the minimal jurisdictional limits of this Court.

10. Companion has already incurred attorneys' fees and expenses in the defense of Candor Construction. In addition, Plaintiffs in the Underlying Lawsuit have claimed lost family support damages in the amount of $2,132,351.00. These damages, in part, form the basis of a *Stowers* demand[1] tendered to Companion on or around March 27, 2013, for the amount of

---

[1] *See G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved).

all applicable policy limits of Companion's commercial general liability policy issued to Candor Construction Company. A copy of the *Stowers* demand is attached hereto and fully incorporated herein by reference as **"Exhibit A."** The liability limits of the Companion policy at issue are $1,000,000.00 for each occurrence and $2,000,000.00 in the general aggregate.

11. Venue in this diversity action is appropriate in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1391 (b)-(d) because Candor Construction is subject to the personal jurisdiction of this Court and therefore, is deemed to reside in this district. In addition, a substantial part of the events giving rise to this Insurance Coverage Dispute occurred in Dallas, County, Texas, and the Underlying Suit remains pending in Dallas County District Court.

12. All persons having an interest in the outcome of this litigation have been joined as parties. The interest of Companion is adverse to the interest of all Defendants herein. An actual controversy of a justiciable nature exists between Companion, Candor Construction and Internacional Realty Management, LLC regarding the rights and responsibilities of Companion under the policy at issue in connection with the Underlying Suit. Neither Companion, Candor Construction nor Internacional Realty Management, LLC have sought, by any other legal action, to have adjudicated their respective rights involving the policy at issue.

## III. BACKGROUND

**The Underlying Lawsuit.**

13. Maria Aracely Torres, Individually and on Behalf of the Estate of Jose Rosalio (Miguel) Mendoza Vasquez, Deceased, and as Next Friend of Minor Children Melissa Mendoza, Luis

Alberto Mendoza and Jonathan Mendoza (hereinafter "The Mendozas") filed Plaintiffs' Original Petition in the Underlying Suit on or around December 21, 2011 against Candor Construction and other defendants. Plaintiffs have twice amended their Petition; the live pleading in the Underlying Litigation is the Second Amended Petition, filed in March 12, 2013. A copy of this petition is attached hereto as "**Exhibit B**" and incorporated herein by reference.

14. The Mendozas allege the following facts regarding the accident and fatal injuries sustained by Jose Mendoza, Candor Construction and Internacional Realty Management, LLC in their Second Amended Petition:

- On or about December 12, 2011, JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ, Deceased, was working in the course and scope of his employment with Defendant Luis Alberto Ponce-Castro d/b/a PONCE ROOFING, and/or CANDOR CONSTRUCTION COMPANY at the Stoneleigh at Bear Creek property located at 1401 SH 360, Building 24, Euless, Texas and managed by INTERNACIONAL REALTY MENAGEMENT, LLP. JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ and [sic] was doing roof repairs on top of building number 24 at Stoneleigh at Bear Creek. As a result of the negligence of Defendants, Mr. Mendoza Vasquez fell from three stories to the ground below.

- CANDOR CONSTRUCTION COMPANY ("Candor and/or Ponce"), knowing of the safety risks with the construction project did not take any action to enforce safety rules and practices with respect to the work done by Mr. Mendez [sic] or employ safety precautions to compensate for known safety deficiencies.

- Because the work on the premises for the purposes of inspecting, maintaining, and/or repairing the subject roof possessed and/or controlled by Defendants posed a peculiar unreasonable risk of physical harm unless special precautions were taken, Defendants had a duty to require any contractor hired to perform the work to take the necessary precautions by contract or any other manner necessary to ensure the taking of such precautions. Defendants breached these duties in that they failed to require any contractor to take necessary precautions regarding the inspection, maintenance, and/or repair of the subject roof.

SECOND AM. PET. at ¶¶ 4.01; 4.02 and 5.06.

15. Based, in part, on these factual allegations, The Mendozas assert causes of action for premise liability (¶¶5.01-5.04); negligence (5.05-5.06) and gross negligence (5.09-5.12).

**The Companion Commercial General Liability Insurance Policy.**

16. Companion requests that the Court enter judgment herein declaring the rights and duties of the parties pursuant to Commercial Protector Policy DJGL103916 issued to Candor Construction Co., Inc., with effective dates of June 17, 2011 through June 17, 2012. The Policy has liability limits of $1,000,000.00 per occurrence for damages because of "bodily injury" or "property damage" as defined, and a general aggregate and products-completed operations aggregate of $2,000,000.00.

17. Subject to the terms and conditions of the Policy, the Companion general liability policy provides coverage for "personal and advertising injury" and "bodily injury" and "property damage" caused by an "occurrence." The Policy contains the following relevant provisions of coverage for Bodily Injury And Property Damage Liability ("Coverage A"):

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 10 01**

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...

This insurance applies to "bodily injury" and "property damage" only if:

a. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

b. The "bodily injury" or "property damage" occurs during the policy period ...

18. Section II of the Policy defines who qualifies an insured and states in pertinent part:

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organizations other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.

19. The Policy contains exclusions and endorsements, which modify Bodily Injury and Property Damage Liability and which in pertinent part state:

**2. Exclusions**
This insurance does not apply to:

**b. Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**d. Workers' Compensation And Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**
"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:
**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury. This exclusion does not apply to liability assumed by the insured under an "insured contract".

COMMERCIAL GENERAL LIABILITY
CG 21 53 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**

Any Roofing or Any Plumbing Excluding Swimming Pools and Exterior Spas

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

COMMERCIAL GENERAL LIABILITY
CG 21 34 01 87

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## EXCLUSION - DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**

**Any Roofing or Any Plumbing Excluding Swimming Pools and Exterior Spas**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products - completed operations hazard" and arising out of "your work" shown in the Schedule.

COMMERCIAL GENERAL LIABILITY
CG 20 33 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

A. **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply: This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:
   a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
   b. Supervisory, inspection, architectural or engineering activities.
2. "Bodily injury" or "property damage" occurring after:
   a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

20. Section V of the Policy sets forth various definitions, which in pertinent part state:

**Section V – Definitions**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**22.** "Your work":
**a.** Means:
**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes
**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
**(2)** The providing of or failure to provide warnings or instructions.

21. By way of endorsement, the Policy's definition of "Insured Contract" was modified as follows:

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**AMENDMENT OF INSURED CONTRACT DEFINITION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:
**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" to a third person or organization is caused, in whole or in part by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**Candor Construction and Internacional Realty Management, LLC.**

22. On or around November 4, 2011, Candor Construction Company, Inc. and Internacional Realty Management, LTD entered a contract for exterior roof replacement of The Stoneleigh at Bear Creek Apartments. A true and correct copy of the Contract Agreement is attached hereto and fully incorporated by reference as "**Exhibit C.**"

23. Upon information and belief, on or around November 18, 2011, Internacional Realty Management, Ltd. converted its business form from a limited partnership to a limited liability company. The name of the converted entity is Internacional Realty Management, LLC.

24. For the purposes of this insurance coverage dispute, relevant portions of the Contract Agreement state as follows:

**ARTICLE VII**
**INDEMNIFICATION**

7.0 Contractor [Candor Construction] agrees to save, indemnify and hold harmless the Owner's Agent [Internacional Realty Management, Ltd.] against liability, claims, demand [sic], or judgments for damages arising from accidents to persons or property occasioned by Contractor, his agents, subcontractors or employees, and against all claims and demands for damages, arising from accidents to Contractor, his agents, subcontractors or employees, whether occasioned by the Contractor or his subcontractors or employees, and Contractor will defend any and all suits brought against Owner's Agent on account of any such accidents and will pay any judgment rendered in such suits, and will reimburse and indemnify Owner's Agent for all expenditures, including court costs, and counsel fees, made or incurred by Owner's Agent by reason of such accidents.

**ARTICLE VIII**
**INSURANCE**

8.0 Contractor shall carry and pay for such employer's liability and workers' compensation insurance as may be necessary to insure the liability of the parties hereto for injuries to, or death of, Contractor's employees, and Contractor shall also carry public liability, property damage and automobile liability insurance as specified below, and in companies satisfactory to Owner's Agent with certificates showing names of the carriers, numbers of the policies and expiration dates, prior to commencing work hereunder. A certificate shall also be furnished [ ] [sic] the Owner's Agent by each insurance carrier of the Contractor. In the event of policy expiration prior to completion of the work under the Contract, the Contractor shall furnish the Owner's Agent with renewal certificates applicable to renewed policies. No payment shall be made to the Contractor until he has submitted to the Owner's Agent satisfactory evidence that all of said insurance has been obtained and paid for and will continue in force until completion of said work, and if Contractor should sublet any work to a third party, Contractor shall provide evidence that such third party is carrying such required insurance.

8.1 (a) Workers' Compensation insurance to cover full liability under the Workers' Compensation Laws of the State of Texas.
(b) Commercial General Liability $2,000,000.00
(c) Personal Injury Liability $1,000,000.00
(d) Automobile Liability Insurance covering all owned, non-owned and hired automobiles used in connection with the work and with the following minimum limits $500,000.00

25. On or around January 25, 2012, after the Underlying Suit had been filed, Defendant Candor Construction Co. tendered the suit to Companion. Companion assigned counsel to defend Candor Construction and Companion is currently defending Candor Construction in the Underlying Lawsuit subject to a full reservation of rights.

26. Internacional Realty Management tendered the suit to Candor Construction demanding a defense and indemnity pursuant to the terms of the Contract Agreement.

27. In or around June 2012, the suit was subsequently tendered to Companion. Companion agreed to accept the defense of Internacional Realty Management under a complete reservation of rights and assigned counsel to defend Internacional. Internacional, however, has not consented to the substitution of counsel and continues to be defended by other counsel.

28. Companion requests that the Court declare that Companion has no duty to defend or indemnify Candor Construction or International Realty Management, LLC in the Underlying Lawsuit.

## IV. GROUNDS FOR DECLARATORY JUDGMENT

### A. Companion Has No Duty to Defend or Indemnify Candor Construction or Internacional Realty Management, LLC Because Jose Mendoza's Accident Arose Out of Excluded Roofing Operations.

29. The Companion policy contains two separate endorsements, which expressly eliminate from coverage "bodily injury" arising out of "ongoing [roofing] operations" as well as "bodily injury" arising out of completed roofing work.

30. Because the phrases "arising out of," "related to," or "connected with" are broadly and liberally construed in the context of insurance exclusions, the injuries sustained by Jose Mendoza arose out of roofing operations. *See Utica Nat'l Ins. Co. v. Am. Indem. Co.,* 141

S.W.3d 198, 203 (Tex.2004); *Mid-Century Ins. Co. of Tex. v. Lindsey,* 997 S.W.2d 153, 155-56 (Tex. 1999). *See also Gemini Ins. Co. v. Trident Roofing Co., LLC*, No. 3:09-CV-704-M; 2010 WL 335314 at *3 (N.D. Tex. Jan. 22, 2010) (holding insurance policy's "torch down" roofing exclusion eliminated any duty to defend or indemnify insured roofing company for fire damage to church arising from torch down roofing job).

31. Because all of the allegations "arose out of" or are "connected with" Candor Construction's roof repairs at The Stoneleigh at Bear Creek Apartments, even under the most liberal construction of the Underlying Second Amended Petition, Companion owes no duty to defend or indemnify Candor Construction or Internacional Realty Management, LLC in the Underlying Lawsuit. But for the contracted roof repairs, Jose Mendoza would never have been at The Stoneleigh at Bear Creek Apartments, would have never been on the roof, would never have fallen, and never would have been fatally injured.

**B. Coverage is Further Precluded By The Workers' Compensation and Employer's Liability Exclusions.**

32. The Workers' Compensation and Similar Laws Exclusion (Exclusion d) excludes from coverage any obligation of Candor Construction under a workers' compensation, disability benefits or unemployment compensation law or any other similar law.

33. Similarly, the plain language of the Employer's Liability Exclusion (Exclusion e) in the Companion commercial general liability policy precludes coverage for bodily injury to an employee of Candor Construction arising out of and in the course of employment by the insured, or while performing duties related to the conduct of Candor Construction's business. The exclusion extends to any obligation to share damages with, or repay someone else who must pay damages because of the injury, *i.e.,* Candor Construction's indemnitees.[2]

[2] The Employer's Liability exclusion contains an exception and does not apply if Candor Construction

34. Because The Mendozas allege that Jose Mendoza fell from the roof while working in the course and scope of employment with Candor Construction Company (Exhibit B at 4.01), coverage under the Companion policy is precluded.

**C. The Contract Agreement Between Candor Construction and Internacional Realty Management Did Not Confer Automatic Additional Inured Status for Internacional Realty Management.**

35. The Companion Policy contains an endorsement, which automatically confers additional insured status to an owner, lessee or contractor when the construction agreement requires that a person or organization be named as an additional insured. Endorsement CG 20 33 07 04 ("Additional Insured—Owners, Lessees or Contractors—Automatic Status When Required in Construction Agreement With You").

36. Article VIII of the Contract Agreement between Candor Construction and Internacional Realty Management only required that Candor Construction procure insurance to cover itself. **Exhibit C** at Article VIII (p. 4). Because the Contract Agreement never required Candor Construction to name Internacional Realty Management as an additional insured on its CGL Policy, Endorsement CG 20 33 07 04 fails to confer automatic additional insured status and Internacional Realty Management is not entitled to additional insured coverage under the Companion Policy.

**D. The Same Facts That Preclude Companion's Duty to Defend Also Preclude its Duty to Indemnify.**

37. Companion also seeks a declaration that, because it has no duty to defend Candor Construction and Internacional Realty Management, LLC, it has no duty to indemnify Candor Construction and Internacional Realty Management, LLC in connection with the Underlying Litigation. *See Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81,

---

assumed liability under an "insured contract."

84 (Tex. 1997). Because the Underlying Accident involving Jose Mendoza undisputedly arose from excluded roofing operations, no set of facts can ever be developed in the Underlying Suit that would affect or alter the nature of the accident or the nature of the damages The Mendozas seek against Candor Construction and Internacional Realty Management, LLC. Accordingly, the duty to indemnify is ripe for adjudication. *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 745 (Tex. 2009).

## V. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Companion Property and Casualty Insurance Company prays that Defendants be cited to appear and answer herein, and that on final hearing, Companion have judgment as follows:

A. A declaration that, pursuant to Commercial Protector Policy No. DJGL103916, Companion has no duty to defend or indemnify Candor Construction Co., Inc. in the Underlying Lawsuit styled, Cause No. DC-11-15912; *Maria Aracely Torres, et al, v. Candor Construction Company, et al.*, in the 134th Judicial District Court of Dallas County, Texas;

B. A declaration that, pursuant to Commercial Protector Policy No. DJGL103916 and the Contract Agreement entered between Candor Construction Co., Inc. and Internacional Realty Management, Ltd., the Policy does not confer additional insured status to Defendant Internacional Realty Management, LLC;

C. A declaration that, pursuant to Commercial Protector Policy No. DJGL103916, Companion has no duty to defend or indemnify Internacional Realty Management, LLC in the Underlying Lawsuit styled, Cause No. DC-11-15912; *Maria Aracely Torres, et al, v. Candor Construction Company, et al.*, in the 134th Judicial District Court of Dallas County, Texas;

D. Plaintiff be awarded attorneys' fees and expenses incurred in this suit or that will reasonably be incurred in any appeal or other appellate review of any judgment or order of this Court, pre-judgment interest, and post-judgment interest;

E. All costs of court be taxed against Defendants; and,

F. Plaintiff be awarded all other and further relief, general or special, whether in law or in equity to which they may be justly entitled.

Respectfully submitted,

William Reid
State Bar No. 16748500
wreid@reiddennis.com
Jacqueline Montejano
State Bar No. 24027402
jmontejano@reiddennis.com

**REID & DENNIS, P.C.**
Tollway Towers South
15660 Dallas Parkway, Suite 1400
Dallas, Texas 75248-3328
Telephone: 972/991-2626
Facsimile: 972/991-2678

**ATTORNEYS FOR PLAINTIFF COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY**

Respectfully submitted,

William Reid
State Bar No. 16748500
wreid@reiddennis.com
Jacqueline Montejano
State Bar No. 24027402
jmontejano@reiddennis.com

**REID & DENNIS, P.C.**
Tollway Towers South
15660 Dallas Parkway, Suite 1400
Dallas, Texas 75248-3328
Telephone: 972/991-2626
Facsimile: 972/991-2678

**ATTORNEYS FOR PLAINTIFF COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY**

# EXHIBIT "A"

LAW FIRM
A PASSION FOR JUSTICE

March 27, 2013

***Via Facsimile***
Lee Veness
5501 LBJ Freeway, Suite 1100
Dallas, Texas 75254

R. Brian Shields
5301 Spring Valley Road
Suite 200
Dallas, TX 75254-2488

Re: Cause No.: 11-15912; Maria Aracely Torres, Individually, et al. v. Candor Construction Company, et al.

**CONFIDENTIAL SETTLEMENT DEMAND
PURSUANT TO TEX. R. EVID. 408**

Dear Mr. Veness:

This letter is written to you on behalf of our clients, Maria Aracely Torres, Individually and on Behalf of the Estate of Jose Rosalio (Miguel) Mendoza Vazquez, Deceased, and as Next Friend of Melissa Mendoza, Luis Alberto Mendoza and Jonathan Mendoza, minors. This letter shall constitute a *Stowers* Demand for the amount of **all applicable policy limits** for the Companion Proprerty and Casualty Group Policy Number DJGL103916 for the death of Jose Rosalio (Miguel) Mendoza Vazquez as a result of the negligence of Candor Construction Company.

Please remind your client and its liability carrier that Texas recognizes a cause of action on the part of the insured against its liability carriers if the insured is damaged because of the carrier's negligence in refusing to settle the claims against its insured within policy limits. *See G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved); *American Physicians Ins. Exchange v. Garcia*, 876 S.W. 2d 842, 848 (Tex. 1994); *Texas Farmers Ins. Co. v. Soriano*, 881 S.W. 2d 312 (Tex. 1994). In *Garcia*, the Texas Supreme Court set out a three-part test for determining whether the liability insurance carrier had breached its duty to settle under *Stowers*: 1) the claim against the insured is within the scope of

coverage; 2) an unconditional demand is made within the policy limits in exchange for a release of the insured; and 3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Garcia*, 876 S.W. 2d at 849; *Soriano*, 881 S.W. 2d at 314.

Plaintiff's demand, based on the facts of this matter, is not only "reasonable", it is also "unconditional", thus assuming and accepting, without limitation to same, the following criteria:

1. This demand is intended to place no conditions on the acceptance of the settlement. *See Insurance Corp. of America v. Webster*, 906 S.W.2d 77 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

2. In exchange for your insured's tender of the amount demanded, Maria Aracely Torres, Individually and on Behalf of the Estate of Jose Rosalio (Miguel) Mendoza Vazquez, Deceased, and as Next Friend of Melissa Mendoza, Luis Alberto Mendoza and Jonathan Mendoza, minors, will provide a full release to the insured. *Travel v. State Farm Mutual Automobile Ins. Co.*, 930 S.W. 2d 862, 867 (Tex. App.—Fort Worth 1996, writ granted); and

3. Plaintiff expressly agrees to satisfy all hospital and any other legally-enforceable subrogation liens with the amount demanded (i.e. the interests of any such subrogation lien holders are expressly included within the amount demanded and will be satisfied therefrom), *Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489 (Tex. 1998).

The best result in this case, from your client's standpoint, is to settle this case with insurance money and not their own money. In any subsequent *Stowers* case against the insurer and any of the insurer's affiliates or subsidiaries, your client's own evaluation of the case, as communicated by them to you, is potential evidence of whether or not Plaintiff's demand is a reasonable demand under the *Stowers* doctrine. As such, we respectfully urge your client to carefully evaluate this case and make a settlement recommendation to their insurance carrier to protect their interest if the case does not settle. If your client believes, after reviewing this demand, that a verdict and judgment in excess of its policy limits is a distinct possibility, then the only prudent course is to recommend that the insurer settle in order to protect it from being exposed to an excess judgment.

If the settlement demand is rejected, please provide in writing the specific, detailed reasons the demand was rejected. This correspondence shall be presented to the jury, which will determine the *Stowers* liability of the insurer, and any of its affiliates and subsidiaries, should you refuse to accept this reasonable demand.

In order to satisfy the *Stowers* prerequisites, our client makes the offer of settlement in this letter. If there are any questions regarding this offer, we will be happy to answer whatever questions your insured has. If, for any reason, you or your client do not believe this to be a demand for an amount within the applicable policy limits, as defined by the *Stowers* doctrine, as currently defined under applicable Texas law, please advise why you believe that to be the case. Otherwise, it is fair to presume that this is a proper demand within the applicable insurance policy limits.

As we wish to provide your client and its liability insurance carrier(s) with a "reasonable time" in which to evaluate this unconditional demand, be advised that this demand automatically expires at 5:00 p.m. on April 29, 2013. See *Allstate Ins. Co. v. Kelly*, 680 S.W. 2d 595, 608 (Tex. App.—Tyler 1984, writ ref'd n.r.e.); *State Farm Lloyds Ins. Co. v. Maldonado*, 935 S.W. 2d 805 (Tex. App.—San Antonio 1996), aff'd in part, rev'd in part, 963 S.W. 2d (Tex. 1998). Moreover, we would request that you send a copy of the letter via certified mail, return receipt requested, to each of the adjusters responsible for this case.

In determining whether a failure to settle within the policy limits is reasonable, two primary factors should be analyzed: 1) the liability facts demonstrate that the claimant is likely to succeed on the merits of the case; and 2) the damages demonstrate that the amount of a jury's verdict is likely to exceed the policy coverage. We believe both factors overwhelmingly suggest that the insurer should tender **all available policy limits** in order to meet this *Stowers* Demand and settle this case.

As mentioned above, this letter is written to you on behalf of our clients, Maria Aracely Torres, Individually and on Behalf of the Estate of Jose Rosalio (Miguel) Mendoza Vazquez, Deceased, and as Next Friend of Melissa Mendoza, Luis Alberto Mendoza and Jonathan Mendoza, minors. This letter extends the opportunity for settlement of their claims against your client, Candor Construction Company. Additionally, enclosed with this letter is a Settlement Brochure for your reference.

## I. THE LIABILITY FACTS DEMONSTRATE THAT THE CLAIMANT IS VERY LIKELY TO SUCCEED ON THE MERITS OF THE CASE

On December 12, 2011, Mr. Mendoza Vazquez was working at the Stoneleigh Apartments at Bear Creek in Euless, Texas. As he was performing work associated with replacing the roof on building number 24, he lost his balance and fell approximately 30 feet to the ground below and died. Mr. Mendoza Vazquez fell off of the roof because Candor Construction, despite its high level of control of the work site, did not ensure that all workers were equipped with proper fall prevention and/or fall protection safety equipment. Not only did they fail to ensure that workers were utilizing proper safety equipment, but Candor Construction did absolutely nothing to establish or ensure that a

fall protection safety program was established for the workers at the work site. The photographs of Mr. Mendoza Vasquez's body, taken shortly after the incident, clearly establish that he was **not even** wearing a safety harness that should have been attached to a safety lanyard.

Candor Construction and its Vice President, David Gedalia, were constantly present at the work site prior to the date of the incident. Additionally, Candor Construction exercised control at the work site. Specifically, David Gedalia testified to the following:

> Q: And so if -- when Guillermo came to you and told you that there was issues with nails and people complaining, then you would go have the conversation with Ponce?
> A: Correct.
> Q: Anybody else or just Ponce?
> A: Just Ponce.
> Q: Okay. And you would direct him to do something about it?
> A: I would **direct** him to clean.
> ...
> Q: Okay. **You had the ability if you saw a safety issue or concern to stop the project, correct?**
> A: **Correct.**
> ...
> Q: Okay. And that includes if you see something going on that you is a violation, getting Ponce stopping the work until the issue is fixed.
> A: I will contact Ponce and let him know the issue.
> Q: And want it -- if it's something that needs fixed right there you expect it to be fixed **right then.**
> A: **Correct.**
> ...
> Q: Okay. And you would make sure he (Ponce) followed your instruction.
> A: To the best of my ability, yeah.
> Q: **And when we're talking about the best of your ability there's no one higher out there than you right. You're where the buck stops, correct?**
> A: **Correct.**

Even though Candor Construction had ultimate control over the worksite, and had **actual knowledge** that workers were working on the roofs without adequate fall protection or fall prevention safety equipment, Candor Construction failed to make sure that the workers were protected. In fact, an OSHA representative performed an inspection of the work site approximately three weeks prior to the incident on November

23, 2011. During that inspection, the OSHA representative identified himself to Mr. David Gedalia and stated that he observed employees working on the roof without fall protection. The OSHA representative even showed Mr. Gedalia photographs of workers working on the roof in violation of OSHA regulations and safe construction practices. The OSHA representative then performed a walk around inspection and was accompanied by Mr. Ponce and Mr. Gedalia. During the walk around, the representative interviewed several employees who stated that they had been on site for one week performing roofing work without fall protection.

That first OSHA inspection occurred on November 23, 2011, a mere 19 days prior to the incident occurring, yet Mr. Gedalia continued to allow these same workers to go onto the roofs on a daily basis without any fall protection safety equipment and without instituting any sort of fall protection safety program. Therefore, Mr. Gedalia knowingly and needlessly allowed the roofers to work in dangerous conditions. Mr. Gedalia was fully aware that working on a roof without fall protection and/or fall prevention safety equipment was highly dangerous and, if someone fell, they would be seriously injured or die. As such, we strongly believe that, based on the egregious facts of this case, we will be able to obtain a finding of gross negligence against Candor Construction.

Plaintiffs' forensic engineer, Hal Watson, Ph.D., has provided a report detailing Candor's negligence in this matter, which I have attached for your perusal. Specifically, Dr. Watson opined that:

1. Mr. Mendoza-Vazquez was found on the ground with **no safety harness attached to his body.** OSHA regulations require a fall protection program for workers at elevated heights;

2. David Gedalia, Candor's representative on the worksite occasionally operated the rough terrain forklift materials handler Candor supplied to lift shingles and felt to the roof and could observe Ponce's employees as they worked on the roofs. Gedalia has had safety training and knows the OSHA regulations but never noticed the roofers not using their protective equipment. Gedalia testified that according to contract Ponce was supposed to follow regulations but **Candor did not enforce** regulations except to talk to Ponce;

3. Candor could have supplied an elevating work platform for Ponce and his employees and used that man lift to take both *men and materials* up and down, to and from the roof and that would have eliminated the hazard of getting on and off,

and being on, unsecured ladders. If such a manlift had been used on 12/12/2012 Mendoza would likely **still be alive;**

4. Both Candor and Ponce **knew or should have known the** OSHA regulations that were being **violated** by Ponce's employees and Ponce himself. An inspection by OSHA of the Candor/Ponce jobsite had occurred **just a few weeks prior to the Mendoza incident** and both of them had been cited for deficiencies in both their fall protection program and their ladder usage. Apparently, **Gedalia asked the OSHA investigator to send him any citations issued to Ponce and he would take care of it.** That is, he would stand in for Ponce. It would seem that **neither Candor nor Ponce** took the safety violation citations seriously and failed to make corrections on their worksites to ensure fall protection and ladder use safety for their employees. This **failure** suggests a **conscious indifference** to the safety of the employees and may very well have led to Mendoza's death.

5. OSHA safety standards for roofing workers and their employers are **minimal** standards and far from adequate. Both ANSI and ASSE recognized a long time ago and have promulgated safety standards which provide adequate safety and fall protection from elevated worksites. However, if ***either*** the OSHA or the ANSI/ASSE standards had been incorporated into the fall protection program for Ponce's roofers, it is very likely this accidental death **would never have happened.**

6. **Candor Construction**, Ponce Roofing and Internacional Realty all bear responsibility for the failure of allowing the roofing employees to do the reroofing work at elevated heights without proper fall protection and ladder usage which lead to the death of Mendoza. Any one of them could have stopped the dangerous practices and all were on notice from the earlier OSHA investigation.

Additionally, the ladder being used to get on and off of the roof of building 24 on the date of the incident was not safe. Specifically, that ladder was not tall enough to be used on the roofs of these buildings. OSHA and safe construction practices require that a ladder be used and situated so that there are three rungs above the roof level. The photographs taken by the Euless Police Department on the date of the incident indicate that only two rungs of the ladder were above roof level. Furthermore, Mr. Gedalia would

have been aware of this fact, as that ladder had been used on all of the roofs for the project at Stoneleigh and he has testified that he had personally climbed up the ladder to inspect the roofs. It is also clear from those photographs that the ladder was not properly anchored. The ladder was only loosely tethered to a column on the building. OSHA and safe construction practices require that the ladder be anchored to either the top of the roof or the ground, neither of which was the case in this situation. As such, it is clear that Candor Construction did not ensure that adequate safety measures were in place for the workers conducting roofing work at dangerous heights.

There is no question that this construction project was being conducted in an unsafe manner and that it was only a matter of time before someone was catastrophically injured or killed as a result of Candor's negligence and complete disregard for the safety of the roofers.

## II. THE DAMAGES DEMONSTRATE THAT THE AMOUNT OF A JURY'S VERDICT WILL EXCEED THE DEMAND IN THIS CASE

Mr. Mendoza Vazquez fell approximately 30 feet to his death. The Euless Fire Department arrived at approximately 4:09 p.m. and noted that there was a large pool of blood under Mr. Mendoza Vazquez. Mr. Mendoza Vazquez was apneic, was without a pulse and had no signs of life. The medical director arrived at 4:20 p.m. and pronounced Mr. Mendoza Vazquez dead.

The Tarrant County Medical Examiner performed an autopsy on Mr. Mendoza Vazquez following his death. Dr. Susan Roe found that Mr. Mendoza Vazquez died from blunt force injures due to his fall from the roof. Specifically:

1. Head injuries:
    a. Subgaleal hemorrhage;
    b. Subdural blood staining;
    c. Subarachnoid hemorrhage, diffuse, patchy;
    d. Cerebral lacerations with near-transection of the brainstem;
    e. Extensive skull fractures; and
    f. Atlanto-occipital dislocation.
2. Sternum and left second rib fractures;
3. Bilateral tibia and fibula fractures; and
4. Soft tissue injuries.

Plaintiffs' forensic pathologist, Dr. Richard Harding, provided a report regarding the cause of Jose Mendoza Vazquez's death in this case. Dr. Harding opined, to a high degree of biomechanical and medical probability, that:

1. Mr. Mendoza Vazquez came to his death when he fell vertically to the ground from the roof's edge to his point of rest behind the ladder;

2. Mr. Mendoza Vazquez fell **before** he had mounted the access ladder;
3. After falling approximately 35 feet over 1.47 seconds, Mr. Mendoza Vazquez's body was traveling at a velocity of approximately 32 mph (47.5 fps);
4. Mr. Mendoza Vazquez's injuries were clearly consistent with a fall of such severity;
5. **Mr. Mendoza Vazquez would have experienced mental anguish and suffering (so called "pre-impact fear") as a result of his fall; and**
6. **Mr. Mendoza Vazquez would have known of his impending demise throughout his fall sequence (including both the fall itself and his loss of balance, which precipitated it).**

Mr. Mendoza Vazquez was a strong and faithful family man that worked hard to provide financial support to his family, a family that he loved, cherished and protected. His family now struggles to get by without the person who always made sure they had the necessities of life and the love that only a husband and father could provide.

Mr. Mendoza Vazquez and Aracely Torres had been married for over six years. Mr. Mendoza Vazquez cherished spending time with his wife and their three children. Now Aracely Torres must struggle through life without her loving and caring husband. She has been forced to raise their three children without the love and support of her husband.

Mr. Mendoza Vazquez left three young children behind as a result of his death. Melissa, age 6, Luis, age 5, and Jonathan, age 2, will never again see their father. His children will never again get to feel the love and protection that their father provided them. Mr. Mendoza Vazquez will never be able to teach his children how to drive a car, watch as they graduate from school or see the wonderful people that they become. Melissa will not have her father with her to walk her down the aisle. Luis and Jonathan will not have their father to teach them how to be responsible men. The children will be forever scarred by this tragic incident and the loss of their father.

Finally, Plaintiffs' economist, Dr. J. Herbert Burkman, performed an economic loss study to determine the economic loss this family suffered due to Mr. Mendoza-Vazquez's death. Dr. Burkman presents a long-term forecast of Mr. Mendoza-Vazquez's gross income from his career as a roofer and general laborer. Dr. Burkman concludes that, had Mr. Mendoza-Vazquez not been fatally injured in December 2011 and had he been able to remain in the workforce through retirement in 2049 (at 65 years of age), his likely gross earnings would have been $2,919,977. After payment of income and payroll taxes, he would have disposable income of $2,569,580. After accounting for his personal consumption, Dr. Burkman concludes that Mr. Mendoza-Vazquez's lifetime income would have provided **$2,132,351 for family support.**

We can all agree that a fair and impartial jury in Dallas County will be able to appreciate the extraordinary nature and severity of the injuries and damages sustained by this family. A fair and impartial jury will understand and compensate them for the loss of Jose Mendoza Vazquez. And the jury will approach the task of compensating the Estate of Jose Mendoza Vazquez with the determination and reverence appropriate to his extreme suffering and senseless death in the prime of his life.

As set forth herein, the damages suffered by the Mendoza Vazquez/Torres family overwhelmingly demonstrates that a jury's verdict will absolutely exceed all available policy coverage. With this in mind, please share this letter with your client and please make certain that they have an understanding and appreciation for the consequences of an adverse verdict.

Please be advised that this demand will expire on April 29, 2013 at 5:00 p.m.

Sincerely,

Paula A. Wyatt

PAW:tr
enclosures

# EXHIBIT "B"

Filed
13 March 12 P6:18
Gary Fitzsimmons
District Clerk
Dallas District

CAUSE NO. DC 11-15912

| | | |
|---|---|---|
| MARIA ARACELY TORRES, INDIVIDUALLY And ON BEHALF OF THE ESTATE OF JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ, DECEASED, and AS NEXT FRIEND OF MELISSA MENDOZA, LUIS ALBERTO MENDOZA and JONATHAN MENDOZA, MINORS | § | IN THE DISTRICT COURT |
| Plaintiffs | § | |
| VS. | § | 134TH JUDICIAL DISTRICT |
| CANDOR CONSTRUCTION COMPANY, LUIS ALBERTO PONCE-CASTRO d/b/a, PONCE ROOFING, and INTERNACIONAL REALTY MANAGEMENT LLC. | § | |
| Defendants | § | DALLAS COUNTY, TEXAS |

**PLAINTIFFS SECOND AMENEDED PETITION**

**TO THE HONORABLE DISTRICT COURT JUDGE:**

COME NOW PLAINTIFFS, MARIA ARACELY TORRES, INDIVIDUALLY and ON BEHALF OF THE ESTATE OF JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ, DECEASED, and AS NEXT FRIEND OF MELISSA MENDOZA, LUIS ALBERTO MENDOZA and JONATHAN MENDOZA, MINORS, and file this their First Amended Petition against CANDOR CONSTRUCTION COMPANY, LUIS ALBERTO PONCE-CASTRO d/b/a PONCE ROOFING and INTERNACIONAL REALTY MANAGEMENT, LLC, Defendants herein, and would state the following in support thereof:

## I.
## DISCOVERY

1.01. Plaintiffs intend to conduct discovery in this suit under Level Three, pursuant to Texas Rules of Civil Procedure 190.4, and will seek an order, agreed or otherwise, to this effect.

## II.
## PARTIES

2.01. Plaintiff, MARIA ARACELY TORRES, is the wife of the decedent JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ and is a resident of Lewisville, Denton County, Texas. She sues individually, as representative of the estate of JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ, and as next friend of MELISSA MENDOZA, LUIS ALBERTO MENDOZA and JONATHAN MENDOZA, MINORS.

2.02. Plaintiff, MELISSA MENDOZA, a minor, is the natural daughter of Maria Aracely Torres and Jose Rosalio (Miguel) Mendoza Vasquez and sues by and through her next friend, Maria Aracely Torres.

2.03. Plaintiff, LUIS ALBERTO MENDOZA, a minor, is the natural son of Maria Aracely Torres and Jose Rosalio (Miguel) Mendoza Vasquez and sues by and through his next friend, Maria Aracely Torres.

2.04. Plaintiff, JONATHAN MENDOZA, a minor, is the natural son of Maria Aracely Torres and Jose Rosalio (Miguel) Mendoza Vasquez and sues by and through his next friend, Maria Aracely Torres.

2.05. Defendant, CANDOR CONSTRUCTION COMPANY is a corporation organized under the laws of Texas and is registered to do business in Texas. Defendant CANDOR has been served and has made an appearance.

2.06. Defendant Luis Alberto Ponce-Castro d/b/a PONCE ROOFING is an individual residing in Dallas, Texas. Defendant PONCE has been served but has yet to make an appearance.

2.07. Defendant INTERNACIONAL REALTY MANAGEMENT, LLC is a corporation organized under the laws of the State of Texas and is registered to do business in Texas, with its principal office in San Antonio, Texas. Internacional Realty Management, LLC has been served and has made an appearance.

## III.

## VENUE AND JURISDICTION

3.01. Venue as to the application and petition is proper in Dallas County, Texas, pursuant to Section 15.002(a) of the Texas Civil Practice and Remedies Code in that Defendant Condor Construction Company has its principal place of business in Dallas County, Texas.

3.02. Jurisdiction is proper because this is a personal injury suit in which the amount of damages sought exceeds the minimum jurisdictional limits of this Court.

## IV.

## RELEVANT FACTS

4.01 On or about December 12, 2011, JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ, deceased, was working in the course and scope of his employment with Defendant Luis Alberto Ponce-Castro d/b/a PONCE ROOFING, and/or CANDOR CONSTRUCTION COMPANY

at the Stoneleigh at Bear Creek property located at 1401 SH 360, Building 24, Euless, Texas and managed by INTERNACIONAL REALTY MANAGEMENT, LLP. JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ and was doing roof repairs on top of building number 24 at Stoneleigh at Bear Creek. As a result of the negligence of Defendants, Mr. Mendoza Vasquez fell from three stories to the ground below.

4.02 CANDOR CONSTRUCTION COMPANY ("Candor and/or Ponce"), knowing of the safety risks associated with the construction project did not take any action to enforce safety rules and practices with respect to the work done by Mr. Mendez or employ additional safety precautions to compensate for known safety deficiencies.

## V.

## CAUSES OF ACTION

**A. Liability of Defendants.**

5.01. Defendants CANDOR and/or INTERNACIONAL and/or PONCE had actual or constructive control or possession of the premises at issue and the operations on the premises. JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ was at all times an invitee on the premises.

5.02. The ladder utilized on the premises, including the attachments to the ladder as installed and maintained, posed an unreasonable risk of harm to those using the ladder for its intended purpose in that it was not properly installed and/or maintained to prevent a person from falling. Defendants knew or reasonably should have known of the danger posed to invitees, including JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ.

5.03. Defendants breached their duties of ordinary care to JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ by failing to adequately warn JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ of the condition and failing to make that condition reasonably safe. Defendants' breach of these duties proximately caused JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ' death.

5.04. Defendants further had a duty to exercise reasonable care in the maintaining of the ladder on the premises. That duty of reasonable care included installing and maintaining the ladder so that it conformed with specifications and regulations. Defendants breached that duty in that they failed to properly inspect and maintain the subject ladder on a regular basis in order to keep it in conformity with safety regulations.

5.05. Defendants further had a duty to exercise reasonable care commensurate with the danger involved to employ a competent and careful contractor to perform work involving a risk of physical harm unless it is skillfully and carefully done. Defendants failed to employ and/or require the use of fall prevention safety devices and/or other safety devices. Defendant had a duty to properly equip the workers on the roof with proper fall prevention equipment, yet failed to do so

5.06. Because the work on the premises for the purpose of inspecting, maintaining, and/or repairing the subject roof possessed and/or controlled by Defendants posed a peculiar unreasonable risk of physical harm unless special precautions were taken, Defendants had a duty to require any contractor hired to perform the work to take the necessary precautions by contract or by any other manner necessary to ensure the taking of such precautions. Defendants breached these duties in that they failed to require any contractor to take necessary precautions regarding the inspection, maintenance, and/or repair of the subject roof.

5.07. As a direct and proximate result of the breaches of Defendant CANDOR and/or INTERNACIONAL and/or PONCE's duties, JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ was killed. This event and the Defendant's breaches of duties are the proximate and/or producing cause of Plaintiffs damages.

**B. Gross Negligence and Premises Liability Against Defendants Candor Construction Company and Luis Alberto Ponce-Castro d/b/a Ponce Roofing.**

5.09 Plaintiffs contend that JOSE ROSALIO (MGIUEL) MENDOZA VASQUEZ committed no negligent acts or omissions that contributed to his injuries and death.

5.10 Defendants, its agents, servants, and/or employees committed various acts and/or omissions constituting gross negligence. Defendants' wrongful conduct and gross negligence was a proximate cause of the incident and the death of JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ and the damages suffered by Plaintiffs.

5.11 The wrongful conduct of the Defendants involved more than momentary thoughtlessness, inadvertence, or error of judgment. Rather, Defendants' conduct constituted a heedless, reckless and wanton disregard for the rights, welfare, or safety of the decedent and, when viewed objectively from the standpoint of said Defendants at the time of the acts or omissions, the conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and said Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of others.

5.12 As such, Defendants' conduct constituted malice and/or gross negligence and Plaintiffs are entitled to recover judgment against Defendants for exemplary damages in an amount exceeding the minimum jurisdictional limit of this Court.

VI.

**DAMAGES**

6.01 Plaintiffs would show that the time of his death, JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ was (27) years of age, and in good health. Before the time of his death and during his lifetime, JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ was an industrious, energetic, happy, loyal and loving husband and father. He performed usual tasks in and about the family residence and gave affection, solace, love and comfort to his wife and children, and in all reasonable probability would have continued to do so.

6.02 As a result of the death of JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ, Plaintiffs (including all those entitled to recover for the death of JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ has suffered loss, damage and injury, including mental anguish, grief and bereavement and loss of affection, love, solace, comfort, companionship, society, maintenance, assistance and emotional support, services, advice, counsel and contributions of a pecuniary value that she would, in all reasonable probability, have received from JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ during his lifetime, had he lived.

6.03 Plaintiffs would further show that JOSE ROSALIO (MIGUEL) MENDOZA VASQUEZ's death was a long, painful, and horrific death causing him conscious pain and suffering, a matter that increases the pain and mental anguish suffered by Plaintiffs.

6.04 Plaintiffs are entitled to recover exemplary damages for all of said injuries, past and future, in an amount exceeding the jurisdictional limit of this Court.

## VII.

## CONDITIONS PRECEDENT

7.01 All conditions precedent have been performed or have occurred to support the Plaintiffs pleadings.

## VIII.

## REQUESTS FOR DISCLOSURES

8.01 Pursuant to the TEXAS RULE OF CIVIL PROCEDURE 194, Defendant is requested to disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2 (a-l).

## IX.

## JURY DEMAND

9.01 Plaintiffs request a jury in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs requests, moves and prays to this Honorable Court that CANDOR CONSTRUCTION COMPANY, LUIS ALBERTO PONCE-CASTRO d/b/a PONCE ROOFING, AND INTERNACIONAL REALTY MANAGEMENT, LLC., be cited to appear and that this Court enter judgment against Defendants for damages to which Plaintiffs may show themselves justly entitled under Texas law, together with pre-judgment interest at the highest legal rate, post-judgment interest at the highest legal rate from the date of judgment

until paid, exemplary damages, costs of court, and such other and further relief both general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

WYATT LAW FIRM, LTD.

By: ______________________

Paula A. Wyatt
State Bar No. 10541400
James F. Perrin
State Bar No. 24027611
70 NE Loop 410, Suite 725
San Antonio, Texas 78216
Telephone(210) 340-5550
Facsimile (210) 340-5581
***ATTORNEYS FOR PLAINTIFFS***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to opposing counsel, by the method indicated below, on this the 12th day of March, 2012.

***Via Facsimile***
Joe Byrom
David Klosterboer& Associates
1301 E. Collins Blvd., Suite 490
Richardson, TX 75081

Lee Veness
5501 LBJ Freeway, Suite 1100
Dallas, Texas 75254

______________________
Paula Wyatt

# EXHIBIT "C"

# CONTRACT AGREEMENT

**STATE OF TEXAS** **PURCHASE ORDER #** 73323

THIS AGREEMENT is made and entered into on the Date Hereof by and between Ownership reflected on Exhibit B hereinafter called the OWNER, and Candor Construction Company, hereinafter called the CONTRACTOR, and for good and valuable consideration the sufficiency and receipt of which are hereby confessed and acknowledged, the parties agree as follows:

## ARTICLE I
## DEFINITIONS

1.0 As used in this contract or in any documents executed in connection herewith, the following defined words shall have the following meanings:

1.1 **"Date Hereof"**– November, 4 2011

1.2 **Contractor"**

| | |
|---|---|
| Name: | Candor Construction Company, Inc |
| Address: | 17719 Cedar Creek Canyon |
| City, State, Zip: | Dallas, Texas 75252 |
| Type of Entity: | Corporation |
| Tax ID Number: | |
| Telephone: | 972 248 0958 |

1.3 **"The Project"**– That one certain structure or group or complex of structures and all appurtenances, or fixtures attached thereto as described in the Contract Documents and known as:

| | |
|---|---|
| Name: | Stoneleigh at Bear Creek |
| City, State: | 1401 Hwy 360 South, Euless, Texas 76039 |

1.4 **"The Work"**– All labor, services, materials, tools, and equipment necessary to complete in a good and workmanlike manner the Work of the nature as follows:

Exhibit: Exhibit A

1.5 **"Contract Price" or "Contract Sum"**

**See Exibit A**

1.6 **"Liquidated Damages"**– NOT APPLICABLE

1.7 **"Contract Documents"**– Shall include this Agreement, all Drawings, Plans, Specifications, and all addenda hereto or thereto issued prior to the Date Hereof, and all written Modifications issued subsequent thereto, and the Description of the Work specifically set forth in Exhibit "A".

1.8 **"Owner's Agent"**—

| | |
|---|---|
| Name: | Internacional Realty Management, LTD |
| Address: | 405 North St. Mary's, Ste. 850 |
| City, State, ZIP: | San Antonio, TX 78205 |
| Telephone: | (210) 281-1469 |
| Fax: | (210) 281-1337 |

## ARTICLE II
## PAYMENT

2.0 In consideration of the full and faithful performance of the terms of this agreement to the satisfaction of the Owner's Agent, Owner will pay to Contractor the Contract Sum, based on percent of completion withholding the final 10% 30 days after substantial completion. Each invoice will be supplied to Owner's Agent with an conditional lien release attached hereto as Exhibit C.

## ARTICLE III
## CONTRACTOR'S PERFORMANCE

3.0 Contractor hereby covenants and agrees to furnish and pay for all labor, services, materials, tools, and equipment, and shall perform all of the Work strictly in accordance with the Contract Documents and Contractor's shop drawings which are approved and accepted in writing by Owner's Agent, see Exhibit A.

3.1 Contractor shall conform to and abide by specifications, drawings, or explanations furnished by the Owner's Agent to detail and illustrate the work to be done.

3.2 Owner's Agent specifically reserves the right to make such modifications, changes, or deletions as may be required by the Owner, Architect, or Owner's Agent in order to complete the Project, and the price to be paid shall be adjusted accordingly; provided, however, that any change orders which increase or decrease the Contract Sum must be in writing, and signed and approved by the Owner's Agent prior to the commencement of work on such change order, as a condition precedent to the liability of Owner to Contractor for any amount owed as a result of said change order.

3.3 The Contractor agrees that the Owner's equipment will be available to the Contractor only at the Owner's Agent's discretion and on terms mutually agreed upon.

3.4 The Contractor, if required by Owner's Agent, shall promptly submit shop drawings and samples required in order to perform the Work efficiently, expeditiously and in a manner that will not cause delay in the progress of the work on the Project.

3.5 All of the Work shall be done subject to the final written approval of the Architect or the Owner's Agent. The Owner's Agent's decision in all matters relating to the Work and its approval shall be binding upon the parties.

3.6 The Contractor shall, when requested by Owner's Agent, and, if so specified by Owner's Agent, as a condition precedent to payment of any and all amounts owed by Owner to Contractor, furnish proof of payment for all materials, equipment, supplies, and labor, in connection with the Work and additionally shall provide Owner's Agent with such lien waivers, bills paid, affidavits, and other evidence of payment as Owner's Agent may reasonably request from time to time.

3.7 Contractor shall give all notices and comply with all laws, rules, regulations, or orders of any public authority bearing on the performance of the Work, including, but not limited to, compliance with all rules, regulations or orders of the Occupational Safety and Health Administration and of the Equal Employment Commission or any other rules or regulations of any governmental or quasi-governmental authority; including obtaining all necessary licenses and permits in connection with the performance of the Work and all unemployment, tax, social security, and worker's compensation acts.

3.8 Contractor shall take all reasonable precautions necessary to protect the work of others and shall immediately pay for any such damage so caused by Contractor, or Owner's Agent may withhold any such amounts necessary to pay for such damage from monies owed by Owner to Contractor.

**3.9 Contractor shall daily keep the premises free from accumulation of waste materials or rubbish arising out of the operations of this Contractor, and upon completion of the Work shall immediately clear the premises from any such rubbish, waste materials, or other surplus materials of Contractor. In addition to the foregoing, the Contractor shall comply with all clean up directions by Owner's Agent, including any specific provisions which may be included in Exhibit "A".**

3.10 Contractor agrees to pay not less than the scale of wages prescribed by law and to supply Owner's Agent with any reports or information in connection with Contractor's payroll as Owner's Agent may reasonably request.

3.11 Contractor shall not discriminate against any employees or applicants for employment because of race, creed, color, national origin, or sex and shall include this provision in all its Contracts.

3.12 The Contractor shall have no dealings with the Owner in regard to changes, extras or omissions in connection with the Work, but must deal only with Owner's Agent.

## ARTICLE IV
## COMMENCEMENT OF WORK

4.0 Contractor shall begin the work covered by this Contract as soon as Owner's Agent shall notify him that the construction is ready for said work and shall carry on said work promptly, efficiently and at a speed that will not cause delay in the progress of work carried on by other Contractors. Contractor agrees to prosecute his work, and the parts thereof, at such times and in such order as Owner's Agent shall direct.

4.1 Prior to commencement of the work, Contractor shall furnish all samples, lists, drawings, cuts, schedules, and other items required in connection with his work, but approval of same is not relief of his responsibility of complying with the requirements of the drawings and specifications. All transportation costs on samples and drawings furnished by the Contractor shall be paid by him.

4.2 If the Contractor deems that any surfaces or work to which his work is to be applied or affixed is unsatisfactory or unsuitable, written notification of said condition shall be given to Owner's Agent, otherwise no consideration will be given to claims for extra

compensation or non-responsibility in connection therewith.

4.3 Contractor agrees to note the progress of the project so that Contractor shall know when it is possible to commence his work hereunder, and Contractor waives any requirement for written notice that the work may be commenced. Contractor expressly agrees that he shall have all necessary materials, designed, purchased, manufactured, assembled and ready for installation, and shall have available all equipment necessary to the completion of the work, whenever the condition of the project shall permit the installation of such materials and the prosecution of the work. Upon request by Owner's Agent, Contractor agrees to furnish satisfactory proof that all preliminary arrangements have been made or entered into to enable Contractor promptly to begin the work as soon as the project is ready for the commencement of same.

## ARTICLE V
## COMPLETION OF WORK

5.0 It is agreed that time is of the essence of this Contract and Contractor shall complete the work covered by this Contract in accordance with the current schedule set by Owner's Agent, with the understanding that Owner's Agent shall give Contractor a minimum of 24 hours notice to perform the necessary work or that the construction scheduled has been revised. Any allowance for extension of time shall be agreed upon in writing between Owner's Agent and Contractor. Contractor in agreeing to complete the work within the time specified, has taken into consideration and made allowances for the ordinary delays of Common Carriers, delay in securing materials or workmen, changes, omissions, alterations or otherwise.

## ARTICLE VI
## GUARANTY OF WORK

6.0 Contractor hereby guarantees its work against all defects of labor or workmanship, as called for in the Contract Documents, for a period of not less than ten (10) years from the date of completion of said work and the final approval and acceptance thereof by the Owner, Owner's Agent, or the Architect, or their authorized representatives. Contractor shall, at its own cost, promptly amend, correct and make good any defects in its work which may appear during construction or within the guarantee period contemplated by this paragraph. The decision of the Owner as to the existence of such defects shall be conclusive and, should Contractor refuse or neglect to proceed at once with the correction of rejected or defective materials and/or workmanship, after receiving notice to do so it is agreed that the Owner's Agent shall have the right and power to have the defects remedied, or changes made, at the expense of the Contractor, and the Contractor agrees to pay to Owner's Agent, on demand, any and all loss and/or expense paid or incurred by the Owner's Agent in remedying such defects and/or making such changes, together with interest thereon at the rate of the lesser of (i) eighteen percent (18%) per annum or (ii) the maximum permissible interest rate permitted by law, from the date said expenses are incurred until the date the same are paid.

6.1 The Contractor shall furnish all guarantees, and operation instruction, "as-built" diagrams, etc., for materials and equipment installed by him as required by specifications.

6.2 Contractor agrees to furnish, upon completion of his work, and prior to final payment therefor, a letter from the manufacturer(s) of all major pieces of equipment furnished by him stating that the installation thereof has been done in accordance with the recommendation of said manufacturer(s) and the manufacturer(s) will honor any and all warranties and/or guarantees normally given on this equipment.

6.3 The Contractor shall effectually secure and protect his material and work and shall bear and be liable for all loss and/or damage of any kind in connection therewith at any time prior to the installation and acceptance thereof, unless said loss or damage is caused by the direct negligence of the Owner's Agent.

## ARTICLE VII
## INDEMNIFICATION

7.0 Contractor agrees to save, indemnify and hold harmless the Owner's Agent against liability, claims, demand, or judgements for damages arising from accidents to persons or property occasioned by Contractor, his agents, subcontractors or employees, and against all claims and demands for damages, arising from accidents to Contractor, his agents, subcontractors or employees, whether occasioned by the Contractor or his subcontractors or employees, and Contractor will defend any and all suits brought against Owner's Agent on account of any such accidents and will pay any judgement rendered in such suits, and will reimburse and indemnify Owner's Agent for all expenditures or expenses, including court costs, and counsel fees, made or incurred by Owner's Agent by reason of such accidents.

## ARTICLE VIII
## INSURANCE

8.0 Contractor shall carry and pay for such employer's liability and worker's compensation insurance as may be necessary to insure the liability of the parties hereto for injuries to, or death of, Contractor's employees, and Contractor shall also carry public liability, property damage and automobile liability insurance as specified below, and in companies satisfactory to Owner's Agent with certificates showing names of the carriers, numbers of the policies and expiration dates, prior to commencing work hereunder. A certificate shall also be furnished the Owner's Agent by each insurance carrier of the Contractor. In the event of policy expiration prior to the completion of work under the Contract, the Contractor shall furnish the Owner's Agent with renewal certificates applicable to renewed policies. No payment shall be made to the Contractor until he has submitted to the Owner's Agent satisfactory evidence that all of said insurance has ben obtained and paid for and will continue in force until completion of said work, and if Contractor should sublet any work to a third party, Contractor shall provide evidence that such third party is carrying such required insurance.

8.1 (a) Worker's Compensation Insurance to cover full liability under the Worker's Compensation Laws of the State of Texas.

(b) Commercial General Liability: $ 2,000,000.00

(c) Personal Injury Liability: $ 1,000,000.00

(d) Automobile Liability Insurance covering all owned, non-owned and hired automobiles used in connection with the work and with the following minimum limits: $ 500,000.00

## ARTICLE IX
## DEFAULT OF CONTRACTOR

9.0 The following shall constitute an Event of Default under this agreement:

9.1 The failure of the Contractor to correct any deficiencies in the Work within two (2) days after Owner's Agent sends written notice of such deficiencies from Owner's Agent by certified mail, return receipt requested or by personal delivery of said notice.

9.2 The failure of the Contractor to provide any labor, materials, information, documentation or materials of any kind or nature as may be reasonably necessary to carry out the Work or any of the other terms and provisions of this Contract or any other Contract Documents within two (2) days after having received a request for such from the Owner's Agent.

9.3 The failure of the Contractor to conform to or abide by any of the covenants, terms or conditions of this Agreement or any other of the Contract Documents.

9.4 The filing of claim or lien against the Contractor by any person or entity supplying labor, materials or other supplies in connection with the Project, against the Project or any part thereof or against the Owner or Owner's Agent or any other person as a result of the Work of Contractor.

9.5 The filing, either by Contractor, voluntarily or involuntarily, of any general assignment for the benefit of creditors or the filing of any petition or application for protection under the provisions of any of the Bankruptcy laws of the United States.

## ARTICLE X
## OWNER'S RIGHTS UPON DEFAULT BY CONTRACTOR

10.0 Upon the occurrence of an Event of Default the Owner's Agent may:

10.1 Terminate this Agreement by giving written notice of such termination by certified mail, return receipt requested, or personal delivery to the last know address of Contractor of such termination.

10.2 In the event Owner's Agent sends such notice as herein prescribed, Contractor shall immediately vacate the Project. In the event Contractor fails to vacate the Project the parties conclusively stipulate and agree that Owner's Agent shall not have an adequate remedy at law and may obtain injunctive relief to enjoin Contractor's presence from the Project.

10.3 In the event of termination as provide herein, Owner's Agent may, at its option, take any steps he deems advisable to secure necessary labor or materials by Contract or otherwise and may use Contractor's equipment and materials on the job site, and may prosecute the work to completion. In case the Owner's Agent deems this procedure necessary for proper conduct of the work, all monies expended therefore shall be deducted from the Contract Sum herein stated.

10.4 In the event the cost of Completion of the Work after termination as herein provided shall exceed the remaining Contract Sum or Sums owed to Contractor, the Contractor shall be liable and shall immediately pay to Owner's Agent any such additional amount which amount shall bear interest at the lesser of (i) eighteen percent (18%) per annum or (ii) the maximum interest rate permitted by law, from the date such additional expenses or expenses or expense is incurred until the same is paid by Contractor.

## ARTICLE XI
## MISCELLANEOUS

11.1 Owner's Agent shall not be liable to Contractor for any delay to Contractor's work resulting from the act, negligence, or default of others, or by reason of fire or other casualty or on account of riots, strikes or other combined action of the workers, or on account of any acts of God or any other cause beyond Owner's Agent's control; or on account of any circumstances caused or contributed to by Contractor. The Contractor shall reimburse the Owner's Agent for any loss, damage or extra expense paid or incurred by Owner's Agent which is due to Contractor's failure to deliver any and all materials, as required, or to properly perform any and all work in keeping with the progress of the general construction work or to properly perform any term, covenant or condition contained in this Contract, or which is due to the breach of any of the provisions of this Contract. The payment of such sums shall be the compensation to Owner's Agent for delay in completion.

11.2 After completion and final acceptance, Contractor agrees to turn said work over to Owner's Agent in good condition and free and clear from all claims, encumbrances and liens for labor, services, or materials, and to protect and hold harmless Owner's Agent from all claims, encumbrances and liens growing out of the performance of this work and all maintenance required under the Contract Documents, and should Contractor, during the progress of said work, or at any time thereafter, fail to pay for all labor, services or materials used or purchased for use in the prosecution of said work, Owner's Agent may, at its option and without notice to Contractor, co-pay all such claims and charge the amounts thereof to Contractor. In the event suit is filed by any person, firm or corporation asserting a claim or lien for labor, services or materials used or purchased for use in the work covered by this Contract, Contractor will, at his own cost and expense, including counsel fees, defend such suit and pay any judgement rendered herein.

11.3 Contractor accepts exclusive liability for all taxes, including Federal Withholding Taxes and contributions required for the Contractor by the Federal Social Security Act and the unemployment compensation law, or any similar law of any state, in respect to the employees of the Contractor, in the performance of the work herein provided for, and agrees to furnish Owner's Agent with suitable written evidence that Contractor has been authorized to accept such liability. Further, Contractor accepts exclusive liability for any and all personal property taxes for the current year. If Contractor fails to furnish any of such written evidence, prior to the beginning of said work, Owner's Agent may, at its option, co-pay or reserve from payments due or to become due to Contractor an amount equal to the sums necessary to cover such taxes. Contractor agrees to protect and hold harmless Owner's Agent against all liability in respect to said employees or governmental authorities under any of said laws.

11.4 This Contract may not be assigned by Contractor and any such attempted assignment shall be null, void and of no force or effect.

11.5 Owner's Agent, may but shall not be required, in its sole discretion, reasonably make any payments of any sums owed to Contractor jointly payable to Contractor and any creditor or contractor or any person supplying labor or material to Contractor in connection with the performance of the Work.

11.6 This Contract shall be construed under and in accordance with the laws of the State of Texas.

11.7 The headings contained in this Contract are for reference only and shall not affect in any way the meaning or interpretation of this Agreement.

11.8 This Contract may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Contract on the Effective Date.

CONTRACTOR:
By: ______________________

NAME:

______________________
Print Name

______________________
Title

OWNER'S AGENT:
By: ______________________

NAME:

L. Miguel Arce
Internacional Realty Management, LTD

Exhibit A –

CANDOR
CONSTRUCTION
COMPANY, INC. •A NATION WIDE COMPANY •
• Commercial • Industrial • Multi-Family • Painting • Carpentry • Roofing • Toll Free (877) 587-9447

# Exhibit A

## Price for Re Roofing:

## The Stoneleigh at Bear Creek Apartments

**Exterior Roof Replacement:** **$ 872,000.00**

**Payment Schedule is as followed**

30% upon Commencement of project

30% at 50% Completion of project

30% at 100% Completion of project

10% 10 Days after Completion of Project and upon final inspection by owners

**Price is good for 30 days due to the instability in the commodities markets**

Agreed and Accepted:

Mr. David Gedalia,
Vice President of Multi-Family Renovations

Candor Construction Co. Inc.

Date: October 19, 2011

Agreed and Accepted:

______________________

By :( *Authorized Signature)*

Title: ______________________

Date: ______________________

17719 Cedar Creek Canyon, Dallas TX 75252 • PHONE (972) 248-0958 • FAX (972) 250-6903

CANDOR
CONSTRUCTION
COMPANY, INC. • A NATION WIDE COMPANY •

• Commercial • Industrial • Multi-Family • Painting • Carpentry • Roofing • Toll Free (877) 587-9447

Re-Roofing

THE PROJECT:

The Stoneleigh at Bear Creek Apartments
1401 Texas 360
Euless, TX 76039

# CANDOR CONSTRUCTION COMPANY, INC.

• A NATION WIDE COMPANY •

• Commercial • Industrial • Multi-Family • Painting • Carpentry • Roofing • Toll Free (877) 587-9447

PROPOSAL/CONTRACT

October 19, 2011

Thank you for the opportunity to submit the following Proposals for the Re-Roofing of **The Stoneleigh at Bear Creek Apartments.**

Following physical inspection of property, the following work is recommended.

Should you have any questions or if we have omitted any items not addressed in these proposals, please let us know, we would be more than happy to take a second look.

We at Candor Construction and Painting would like to be instrumental in assisting your Management Group in enhancing the value and appearance of your community.

We are looking forward to working with you on this project.

Thank you,

Ike Gedalia,
President
Candor Construction Company

IG/RG
enclosures

17719 Cedar Creek Canyon, Dallas TX 75252 • PHONE (972) 248-0958 • FAX (972) 250-6903

# CANDOR CONSTRUCTION COMPANY, INC.

•A NATION WIDE COMPANY•

•Commercial •Industrial •Multi-Family •Painting •Carpentry •Roofing •Toll Free (877) 587-9447

## TABLE OF CONTENTS


X Roofing Scope of Work

X Pricing Specifications,


17719 Cedar Creek Canyon, Dallas TX 75252 • PHONE (972) 248-0958 • FAX (972) 250-6903

CANDOR
CONSTRUCTION
COMPANY, INC. •A NATION WIDE COMPANY•

• Commercial • Industrial • Multi-Family • Painting • Carpentry • Roofing • Toll Free (877) 587-9447

# Roofing Scope of Work

Tear off 1 layer of composition shingles:
Tear off one layer of felt paper
Remove vent pipe boots
Remove damaged or deteriorated drip edge flashing
Remove flashing at roof/wall joints
Install new flashing at roof wall joints
Install new drip edge flashing as needed
Install new 15# felt paper
Install new metal valley flashing
Install new vent pipe boots
Install new ridge vents
Install new 30-year composition/ architectural shingles

Price includes all materials, equipment, trash removal, storage and equipment rental

**All Buildings, Club House and All Garages will be Re-Roofed using GAF HD Series In Mission Brown color**

**The office will be done in GAF Grand Sequoia in Charcoal Color**

**3,930 square to be replaced**

**Price to include additional material cost for Leasing Office 50 year shingles**

**Price $ 872,000.00**

17719 Cedar Creek Canyon, Dallas TX 75252 • PHONE (972) 248-0958 • FAX (972) 250-6903

CANDOR CONSTRUCTION COMPANY, INC. •A NATION WIDE COMPANY•

•Commercial •Industrial •Multi-Family •Painting •Carpentry •Roofing •Toll Free (877) 587-9447

## Tear-off/ Removal

1. Candor Construction Company Inc. shall remove existing 30-year dimensional/ architectural shingles, felt paper and vent pipe boots flashing from all buildings as needed. All debris from the removal process shall be removed from the property daily and disposed of in accordance with all governmental requirements.

2. Candor Construction Company Inc. shall inspect all decking surfaces. Any hidden damage such as roof decking or truss damage shall be brought to the attention of the on-site manager or maintenance supervisor. Damaged decking shall be replace by the Contractor on a per square foot basis. The on-site manager or maintenance supervisor must obtain approval prior to commencement of repairs. Candor Construction must notify the Owner's representative for inspection of the damaged and replace decking.

3. All plywood deck material being nailed or provided new shall be secured using # 8 common cement coated or ring shank nail. Nail the edges 6 inches on center, and 12 inches on center in the field. Plywood clips shall be used on decks 1/2 inch and smaller where joists are over 16 inches on center.
All decking to be checked and bent or protruding nails shall be pulled.

4. All structural repairs of deck supports (joist or trusses) shall be accomplished at the time of the deck removal and repair. All quantities will be verified by Owner's prior approval. All structural repair and new replacement shall be on a Change Order.

5. The Owner's representative will inspect all structural repairs and new deck replacement and overall deck conditions, prior to placement of felts. Roofing Shingle

CANDOR
CONSTRUCTION
COMPANY, INC. •A NATION WIDE COMPANY•

• Commercial • Industrial • Multi-Family • Painting • Carpentry • Roofing • Toll Free (877) 587-9447

## Application

1. All new roofs shall be installed using 30 year, dimensional/ architectural 215-pound fiberglass shingles over a single layer of 15 pound roofing felt, using a minimum of four 1-inch roofing nails per shingle.

2. All nails shall be installed below the glue line, and removing tabs of the first full shingle and placing it so that the glue line is next to the perimeter drip edge metal flashing shall install the starter shingle.

3. The first full shingle shall be installed over the top of the starter shingle and the joint staggered between the starter shingle and the first full course shingle.

4. New metal drip edge flashing shall be installed along all roof edge locations.

5. All existing wall flashing will be inspected and repaired or replaced as necessary.

6. All shingle work shall comply with the minimum manufacturers' recommendations and application instructions as specified on the manufacturers' label.

7. All existing plumbing and vent flashing will be inspected and replaced as necessary with new neoprene ring flashing.

8. Candor Construction Company Inc. shall provide all materials, labor, tools, equipment, debris-waste removal/disposal, transportation, and services.

9. Material shall be stored neatly and properly.

10. Candor Construction Company will not apply shingles when the air temperature is below 40 degree Fahrenheit. The temperature should be 40 degree Fahrenheit or above.

11. Candor Construction Company Inc. shall not tear off more area than can be re-shingled in one day.

17719 Cedar Creek Canyon, Dallas TX 75252 • PHONE (972) 248-0958 • FAX (972) 250-6903

# CANDOR CONSTRUCTION COMPANY, INC.

•A NATION WIDE COMPANY•

• Commercial • Industrial • Multi-Family • Painting • Carpentry • Roofing • Toll Free (877) 587-9447

## WORKMANSHIP

Candor Construction Company, Inc. will provide the very best of workmanship.

We will take all necessary precautions to protect your property and landscaping.

All workmen will wear clearly marked uniforms while working on this property.

We will make periodical inspections during each phase of renovations.

## GUARANTEE

All work will be performed in accordance to manufactures requirements.

Work will be guaranteed for Five Year to commence upon acknowledgment from Candor Construction Company, Inc. to owners or owner's agent of substantial completion.

We are not responsible for previous over spray on any part of building that was done by any previous painting crew (not our crew).

Guarantee does not cover surface abuse, neglect, moisture or acts of God or substrate degradation or damaged caused by weather.

When work is completed we will make all final inspections of property and issue a certificate of Warrantee for the property.

17719 Cedar Creek Canyon, Dallas TX 75252 • PHONE (972) 248-0958 • FAX (972) 250-6903

Exhibit B –

IRA Stoneleigh, DST.